UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DEAN L. HORTON and
FRANCES H. HORTON,                                           Case No. 19-11162-t7

    Debtors.

ROBERT MARCUS, liquidating
trustee of the Las Uvas Valley Dairies,

    Plaintiff,

v.                                                           Adv. No. 20-1004-t

DEAN L. HORTON,
FRANCES H. HORTON, and
CLARKE COLL, trustee,

    Defendants.

## OPINION

Plaintiff sued defendants, seeking a declaration that the main assets in this bankruptcy estate, a very expensive house and its furnishings, are held in constructive trust for the estate he represents. Before the Court is defendants Dean and Frances Hortons' motion for judgment on the pleadings, asking that the proceeding be dismissed for failure to state a claim. Plaintiff counters that he has stated a valid claim for recognition of a constructive trust. The Court, having reviewed the parties' pleadings and briefs, concludes that the Hortons' motion is not well taken and should be denied.

I.    FACTS

To rule on the motion, the Court assumes that the allegations in Plaintiff Robert Marcus's complaint are true. The factual allegations are summarized as follows:

On September 15, 2017, Las Uvas Valley Dairies, a New Mexico general partnership ("LUVD") filed a chapter 11 case. The Court confirmed a plan of liquidation on June 14, 2018. Marcus is the liquidating trustee under the plan and holds all estate claims.

On May 17, 2019, the Hortons filed this chapter 7 case. Defendant Clarke Coll was appointed trustee.

The Hortons own a house on 584.4 acres (together with furnishings and fixtures, the "House"), valued at $6,900,000. They and Coll assert that the House is property of the Hortons' bankruptcy estate.

For many years the Hortons were the sole owners of LUVD. In 2012 they assigned small partnership interests to their children, but the Hortons have always controlled LUVD.

The dairy industry is cyclical. While a dairy might generate profits for several years, the inevitable downturns require that, for long term success, a dairy husband its resources during the good years.

Despite that, in 2008 the Hortons decided to build the House, paid for by LUVD. In addition, the Hortons lived a lavish lifestyle, supported by large distributions from LUVD.

In 2008 LUVD had a net profit of $2,291,522, but the Hortons took out $2,730,360 that year, so LUVD's net worth decreased by almost $500,000.

In 2009 LUVD lost $10,889,428. Nevertheless, the Hortons caused LUVD to fund House construction costs of $448,152.05 and personal living expenses of $1,572,766.

2012 was a particularly bad year for LUVD, which lost over $9.7 million. On December 31, 2012, LUVD had less cash in the bank than outstanding checks and owed almost $4.3 million to trade and feed creditors. These problems notwithstanding, in 2012 LUVD spent more than $2.3 million on the House and distributed over $2.5 million to the Hortons.

On December 13, 2012, LUVD conveyed the House to the Hortons but continued to pay for its construction and furnishings.

Between 2008 and 2015 LUVD lost $15,064,135 in operations yet paid $11,603,727.73 to build the House and distributed $12,883,874.27 to the Hortons. The Hortons spent some of their distributions on household goods and furnishings for the House.

In 2008, LUVD's total debt was $21,209,650. In 2015, the total debt was $73,655,962. In 2008, amounts owed to trade creditors totaled $1,154,172. By the end of 2015 that amount had grown to $11,347,746.

Cash reserves were similarly depleted. At year-end 2008, "Cash in banks" was an asset on LUVD's balance sheet at $8,625,914. At year-end 2015, "cash" was not shown as an asset. Instead, there was a liability called "Outstanding checks in banks" of $892,288.

As of February 22, 2016, LUVD owed Production Credit Association of Southern New Mexico about $16.8 million. LUVD had to file bankruptcy because it could not resolve that debt. LUVD also owed Metropolitan Life Insurance Company over $30 million.

LUVD could not reorganize in bankruptcy and was forced to liquidate. But for the costs of the House and the Hortons' exorbitant distributions for personal expenses, LUVD could have paid all its unsecured creditors in the normal course of business. The Hortons' conduct destroyed LUVD.

## II. DISCUSSION

The Hortons argue that Marcus's complaint does not state a viable claim because (1) Marcus does not allege unfair retention of the House; (2) constructive trusts are disfavored in

bankruptcy; (3) no constructive trust was imposed prepetition; and (4) Coll's "strong arm" power under § 544(a)(3)[1] can avoid constructive trusts.

A. Rule 12(c) Motions.[2]

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

B. Marcus States a Constructive Trust Claim.

State law is the starting point for determining whether a constructive trust may and should be recognized by a bankruptcy court. *In re Foster,* 275 F.3d 924, 926 (10th Cir. 2001) (courts must "look to state law to determine whether a party has met th[e] burden" of establishing constructive trust requirements); *See, e.g., In re C.W. Mining Co.,* 740 F.3d 548, 561 (10th Cir. 2014) (applying Utah constructive trust law); *In re Taylor,* 133 F.3d 1336, 1342-43 (10th Cir. 1998) (same).

New Mexico recognizes the use of constructive trusts. *See, e.g., New Mexico Military Institute v. NMMI Alumni Association, Inc.*, 458 P.3d 434, 443 (N.M. App. 2018). A constructive trust is an equitable remedy used "to prevent the unjust enrichment that would result if the person having the property were permitted to retain it." *Tartaglia v. Hodges,* 129 N.M. 497, 510 (Ct. App. 2000), quoting *Aragon v. Rio Costilla Cooperative Livestock Ass'n,* 112 N.M. 152, 156, (S. Ct. 1991); *see also Bassett v. Bassett,* 110 N.M. 559, 566 (S. Ct. 1990) ("A constructive trust arises

---

[1] All statutory references are to 11 U.S.C.
[2] Fed. R. Civ. P. 12(b) and (c) apply in bankruptcy cases by operation of Fed. R. Bankr. P. 7012.

where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.") (citation omitted).

There is no precise test in New Mexico for determining when a constructive trust should be recognized. *Aragon,* 112 N.M. at 156 ("The circumstances where a court might impose such a trust are varied."). Constructive trust claimants must generally show wrongdoing such as fraud, duress, undue influence, breach of a fiduciary duty, or abuse of confidence. *Id.*; *see also Gushwa v. Hunt,* 145 N.M. 286, 292 (S. Ct. 2008); *Tartaglia*, 129 N.M. at 510; *City of Rio Rancho v. Amrep Southwest, Inc.*, 260 P.3d 414, 428 (2011). Entitlement to a constructive trust must be proved by clear and convincing evidence. *Matter of Estate of McKim,* 111 N.M. 517, 519 (S. Ct. 1991).

Assuming the truth of Marcus' allegations, he has stated a claim under New Mexico constructive trust law. Marcus alleges that the Hortons breached their fiduciary duties to LUVD by looting the partnership of its much-needed cash over the years to build and furnish the House, causing LUVD to fail. The alleged facts are sufficient to underpin findings of breach of fiduciary and unjust enrichment. The Hortons are not entitled to dismissal because of a defect in pleading.[3]

C. <u>Constructive Trusts in Bankruptcy</u>.

The Hortons also question the viability of constructive trust claims in bankruptcy. While the argument has some merit, dismissal on this ground is not appropriate.

---

[3] The Hortons argue that no claim has been stated because Marcus does not allege Coll is unfairly retaining the House (Coll is selling it). The Hortons seem to think that a transferee, no matter how fraudulent her conduct, can avoid a constructive trust by selling the wrongfully transferred property and keeping the proceeds. The argument is completely meritless.

Courts often cast a jaundiced eye on constructive trust claims in bankruptcy, because constructive trusts appear to be a form of "secret lien"[4] that prefers trust beneficiaries over other creditors. For example, in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443 (6th Cir. 1994), the Sixth Circuit held:

> We think that § 541(d) simply does not permit a claimant in the position of Datacomp to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee.

*Id.* at 1451. Elsewhere the *Omegas* court stated that "Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor." *Id.* at 1452; *see also Oxford Organization, Ltd. v. Peterson (In re Stotler and Co.)*, 144 B.R. 385, 388 (N.D. Ill. 1992) ("[A] constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code."). In *WAS, LLC v. Coll (In re DC Energy, LLC)*, 555 B.R. 786 (Bankr. D.N.M. 2016), this Court stated that "the modern trend in the case law strongly disfavors bankruptcy courts imposing constructive trusts on assets that otherwise would be estate property." *Id.* at 791.

There is another view, however. As Justice Black held in *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 135-36 (1962), "the Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors."[5] If a constructive trust is

---

[4] Secret liens are disfavored. *See, e.g., United States v. Romani*, 523 U.S. 517, 532 (1998) (noting the "strong policy objections to the enforcement of secret liens").

[5] Justice Black's observation about the treatment in bankruptcy of property held for another is still cited. *See, e.g., In re Montreal, Maine & Atlantic Railway, Ltd.*, 888 F.3d 1, 10 (1st Cir. 2018) *In re Mississippi Valley Livestock, Inc.,* 745 F.3d 299, 305 (7th Cir. 2014); *In re Adelphia Communications Corp.*, 224 Fed. App'x 14, 15 (2d Cir. 2006); *In re Sloma*, 43 F.3d 637, 640 (11th Cir. 1995).

recognized in appropriate circumstances, then the trust *res* really is "other people's property"[6] and should not be used to pay the debtor's creditors.

This view is argued persuasively by Professor Andrew Kull in *Restitution in Bankruptcy: Reclamation and Constructive Trust*, 72 Am. Bankr. L.J. 265 (1998) (hereafter, "Kull").[7] The essence of a constructive trust is that, because of the transferee's wrongful conduct, equitable title to the property at issue did not pass. Constructive trusts

> [o]rdinarily require . . . that the recipient of certain nonconsensual transfers return (or pay for) the advantage obtained at the expense of the transferor. A transfer creating a right to restitution is a transfer without an adequate legal basis, meaning a transfer that the law treats as ineffective to shift property rights in the thing transferred.

Kull at 277. While constructive trust issues are relatively straightforward with solvent transferees, they become more difficult if the transferee is insolvent:

> The transaction begins with a nonconsensual transfer from the claimant to the debtor. With the debtor's insolvency, however, the transfer at issue . . . is no longer between the claimant and the debtor, but between the claimant and the creditors of the debtor.

---

[6] If the holder of property in constructive trust files bankruptcy, only the legal title goes into the bankruptcy estate; equitable title remains with the injured party. *See, e.g., Hill v. Kinzler*, 275 F.3d at 926; *In re Lucas*, 300 B.R. 526, 533 (10th Cir. BAP 2003) ("The Tenth Circuit has concluded that under § 541(d) property that a debtor holds prepetition in a constructive trust does not enter the estate."). These cases are based on the language of § 541(d): "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . .becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest . . . ."

[7] Professor Kull's article has been frequently cited. *See, e.g., United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008); *In re Mississippi Valley Livestock, Inc.*, 745 F.3d at 304; *In re PKR, P.C.*, 220 B.R. 114, 117 n.2 (10th Cir. BAP 1998); *In re Leitner*, 236 B.R. 420, 423 (Bankr. D. Kan. 1999); *In re Paul J. Paradise & Associates, Inc.*, 249 B.R. 360, 365 n.21 (D. Del. 2000); *NationsBank v. Commercial Financial Services, Inc. (In re Commercial Financial Services, Inc.)*, 268 B.R. 579, 601 n.33 (Bankr. N.D. Okla. 2001); *In re Mayer*, 451 B.R. 702, 713 (E.D. Mich. 2011); *In re Iley*, 606 B.R. 871, 885 (Bankr. D. Colo. 2019); *In re Mitchell*, 548 B.R. 862, 881 n.27 (Bankr. M.D. Ga. 2016); *In re Kamand Constr., Inc.*, 298 B.R. 251, 255 (Bankr. M.D. Pa. 2003); *In re Lett*, 238 B.R. 167, 197 (Bankr. W.D. Mo. 1999).

Kull at 279-80. Kull argues it would be unfair to take away the trust beneficiaries' equitable title simply because the holder of legal title files bankruptcy:

> By asserting the restitution claim in bankruptcy (perhaps by seeking a declaration of constructive trust in an adversary proceeding), the claimant seeks legal confirmation of his equitable title. Denial of the restitution claim means that the claimant's equitable title is destroyed; what had been the debtor's voidable title becomes good title in the hands of the trustee. The result is a transfer of property from the claimant to the creditors. Such a result is impermissible in a bankruptcy scheme that takes property rights as it finds them.

Kull at 282. Viewed in this light, if "equity and good conscience"[8] dictate the recognition of a constructive trust, doing so would not conflict with the Bankruptcy Code. The Code, like the Act, does not authorize the trustee to distribute other people's property.[9]

D. <u>A Constructive Trust Arises When the Wrongdoing Occurs</u>.

The Hortons argue that, for a constructive trust to be effective in a bankruptcy case, it must have been recognized pre-petition; post-petition recognition is ineffective. This argument must be overruled; a constructive trust arises on the date of the wrongful transfer, not the date a court recognizes it. In *Andrews*, for example, the Tenth Circuit stated: "We have previously held in the bankruptcy context, however, that 'the effective date of the constructive trust is the date the wrongful act occurred.'" 530 F.3d at 1237 (quoting *U.S. Dep't of Energy v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445, 1453 (10th Cir. 1990)); *In re Pardee*, 433 B.R. 377, 388 n.49 (Bankr. N.D. Okla. 2010) (quoting *Seneca*); *In re Schempp Real Estate, LLC*, 303 B.R. 866, 880 (Bankr. D. Colo. 2003) (citing same); *Leitner*, 236 B.R. at 424-25 (when a bankruptcy court finds

---

[8] *Davidson v. Click*, 249 P. 100, 104 (N.M. 1926).
[9] For cases that reach the same conclusion, *see Old Republic Nat'l Title Ins. Co. v. Tyler (In re Maneron)*, 206 B.R. 394, 400 (Bankr. E.D. Va. 1997) (4th Cir. 1998) (constructive trust in not inherently incompatible with the fair treatment of creditors in bankruptcy); *In re Leitner*, 236 B.R. at 423-25; *In re Reider*, 177 B.R. 412, 415 (Bankr. D. Me. 1994) ("Properly applied, constructive trust theory does not conflict with the Code's distribution scheme").

a constructive trust, the judgment is effective back to the date of the wrongful conduct); *Bassett*, 110 N.M. 559 (a constructive trust recognized in 1990 could apply to land purchased in 1950). Whether a constructive trust is recognized pre- or post-petition is immaterial.

E.  The Hortons' § 544(a)(3) Argument Fails.

Finally, the Hortons seek dismissal of the proceeding on the ground that the "strong arm" power given to Coll under § 544(a)(3) allows him to avoid constructive trusts encumbering estate property. Section 544(a)(3) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> . . .
>    (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The Horton's argument deserves serious consideration, but for the reasons set out below the Court concludes that the argument should not be the basis for a Rule 12(c) dismissal. First, Coll has not sought to avoid Marcus' claimed equitable ownership of the House. Unless and until Coll does, it would be premature to rule on his right to do so successfully.

Second, it is not clear Coll's § 544(a)(3) strong arm power can avoid constructive trusts. Professor Kull discusses this issue in detail. First he says:

> It is impossible to read § 544(a)(3) literally as conferring on the trustee "the rights and powers of . . . a bona fide purchaser of real property . . . from the debtor," because the language simply will not parse. The argument at this point, unfortunately, involves a very close reading of a very poorly written statute.

Kull at 296. He then argues that the § 544(a)(3) strong-arm power is properly read as:

> The trustee . . . may avoid any transfer of property of the debtor . . . that is voidable by . . . a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected . . . .

Kull at 296-97 (emphasis removed). Under this interpretation, a trustee's strong-arm power is limited to avoiding certain transfers *by* the debtor, e.g., unrecorded mortgages or deeds. It does not give the trustee the rights of a bona fide purchaser with respect to transfers *to* the debtor. Thus, Professor Kull concludes:

> the power to "avoid any transfer of property of the debtor" cannot be read as a power to avoid a restitution claim against property in the possession of the debtor. Such [restitution] claims arise from transfers *to* the debtor, not transfers *by* the debtor . . . .

Kull at 299 (emphasis retained). Professor's Kull's reading of § 544(a)(3) is persuasive. It is, however, at odds with the commonly accepted interpretation of the subsection, which reads the "bona fide purchaser" language of § 544(a)(3) as one of the trustee's "rights and powers." *See, e.g.,* 5 Collier on Bankruptcy ¶ 544.05 (16th ed.) ("The trustee has the rights of a bona fide purchaser of real property"); *In re Heldt*, 528 Fed. App'x 779 (10th Cir. 2013) (unpublished) (taking as given "the Trustee's exercise of BFP [bona fide purchaser] powers under § 544(a)(3)); *Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir. 1991) ("At the time of bankruptcy filing, the trustee in bankruptcy assumes the position of a bona fide purchaser of real property from the debtor and may avoid any liens on the property that a bona fide purchaser could avoid."). There is abundant case law that a bona fide purchaser takes free of a constructive trust. *See, e.g., Pluemer ex rel. Buggs v. Pluemer*, 322 Wis. 2d 138, 151 (Ct. App. 2009) (bona fide purchaser takes free of an otherwise legally-valid claim to a constructive trust); *In re Marriage of Allen*, 724 P.2d 651, 658 (Colo. 1986) (constructive trust is not available against a bona fide purchaser for value); *Hunnicutt Const., Inc. v. Stewart Title*, 187 Ariz. 301, 305-06 (Ct. App. 1996) (same). Thus, the commonly accepted interpretation of § 544(a)(3) gives Coll a good argument that he may avoid a

constructive trust on estate property. Professor Kull's interpretation, on the other hand, which is based on a more careful reading of the statute, does not.

Professor Kull also argues that a constructive trust is not a transfer and therefore cannot be avoided by a trustee under § 544(a)(3). *See* Kull at 299. Again, however, this view is not the only one. *See, e.g., Belisle v. Plunkett*, 877 F.2d 512, 514-16 (7th Cir. 1989) (trustee strong arm power sufficient to avoid constructive trust interest in estate property).

If and when the time comes, the Court will give Coll, the Hortons, and Marcus the opportunity to brief and argue the correct interpretation of § 544(a)(3) and its proper application to constructive trusts. The only conclusion the Court draws now is that the possibility of Coll asserting his § 544(a)(3) strong arm power to avoid the alleged constructive trust is not a sufficient reason for dismissing Marcus' claim.

### III. CONCLUSION

Marcus has stated a claim for constructive trust under New Mexico law. If "equity and good conscience" dictate the recognition of a constructive trust, doing so would not conflict with the Bankruptcy Code and would relate back to the date of the wrongful transfer. The specter of a potential challenge to Marcus' constructive trust claim under § 544(a)(3) does not mean that the claim should be dismissed. The Hortons' motion for judgment on the pleadings will be denied by a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 26, 2020
Copies to: counsel of record